# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### NEW ALBANY DIVISION

GROTE INDUSTRIES, LLC, an Indiana limited liability company,
GROTE INDUSTRIES, INC., an Indiana corporation,
WILLIAM D. GROTE, III,
WILLIAM DOMINIC GROTE, IV,
WALTER F. GROTE, JR.,
MICHAEL R. GROTE,
W. FREDERICK GROTE, III, and
JOHN R. GROTE,

      Plaintiffs,

v.                                                Civil Action No. 4:12-cv-134

KATHLEEN SEBELIUS, in her official capacity as
Secretary of the United States Department of Health and Human Services;
HILDA SOLIS, in her official capacity as
Secretary of the United States Department of Labor;
TIMOTHY GEITHNER, in his official capacity as
Secretary of the United States Department of the Treasury;
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
UNITED STATES DEPARTMENT OF LABOR; and
UNITED STATES DEPARTMENT OF THE TREASURY;

      Defendants.

---

## VERIFIED COMPLAINT

---

Plaintiffs, Grote Industries, LLC, an Indiana limited liability company; Grote Industries, Inc., an Indiana corporation, William D. Grote, III; William Dominic Grote, IV; Walter F. Grote, Jr.; Michael R. Grote; W. Frederick Grote, III; and John R. Grote; by and through their attorneys, allege and state as follows:

### NATURE OF THE CASE

1.     In this action, the Plaintiffs seek declaratory and injunctive relief for the Defendants' violations of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et*

*seq.* (RFRA), the First and Fifth Amendments to the United States Constitution, and the Administrative Procedure Act, 5 U.S.C. § 701, et seq. (APA), by Defendants' actions in implementing the Patient Protection and Affordable Care Act of 2010 (Pub. L. 111-148 (March 23, 2010), and Pub. L. 111-152 (March 30, 2010) (hereinafter "PPACA"), in ways that coerce the Plaintiffs and thousands of other conscientious individuals and entities and to engage in acts they consider sinful and immoral in violation of their most deeply held religious beliefs.

2.     Plaintiffs William D. Grote, III; William Dominic Grote, IV; Walter F. Grote;  Michael R. Grote; W. Frederick Grote, III; and John R. Grote ("the Grote Family") are practicing and believing Catholic Christians.

3.     The Grote Family owns and operates plaintiffs, Grote Industries, LLC and Grote Industries, Inc. (hereafter individually and collectively referred to as "Grote Industries"), a privately held, for profit business manufacturing vehicle safety systems, headquartered in Madison, Indiana. Grote Industries, LLC currently has approximately 464 full-time U.S. employees as of September 28, 2012.   Unless context indicates otherwise, "Plaintiffs" refers collectively to the Grote Family and Grote Industries.

4.     The Grote Family seeks to run Grote Industries in a manner that reflects their sincerely held religious beliefs.   The Grote Family, based upon these sincerely held religious beliefs as formed by the moral teachings of the Catholic Church, believes that God requires respect for the sanctity of human life and for the procreative and unitive character of the sexual act in marriage.

5.     The Grote Family and Grote Industries adhere to the centuries-old biblical view of Christians around the world, that every human being is made in the image and likeness of God from the moment of conception/fertilization, and that to help destroy

such an innocent being, including in the provision of coverage in health insurance, would be an offense against God.

6.      Applying this religious faith and the moral teachings of the Catholic Church, the Grote Family has concluded that it would be sinful and immoral for them to intentionally participate in, pay for, facilitate, or otherwise support abortifacient drugs, contraception, or sterilization, through health insurance coverage they offer at Grote Industries.   As a consequence, the Grote Family provides health insurance benefits to their employees that omits coverage of abortifacient drugs, contraception, and sterilization.   The Grote Industries health insurance plan is self-insured, and the plan year renews each year on January 1, the next renewal date thus occurring on January 1, 2013.

7.      With full knowledge that many religious citizens hold the same or similar beliefs, on February 15, 2012 the Defendants finalized rules through the Departments of HHS, Labor and Treasury—those rules collectively referred to hereinafter as the "Preventive Services Mandate" or the "Mandate"[1]—that force Plaintiffs to pay for and

---

[1] The Mandate consists of a conglomerate of authorities, including: "Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act," 77 Fed. Reg. 8725–30 (Feb. 15, 2012); the prior interim final rule found at 76 Fed. Reg. 46621–26 (Aug. 3, 2011) which the Feb. 15 rule adopted "without change"; the guidelines by Defendant HHS's Health Resources and Services Administration (HRSA), http://www.hrsa.gov/womensguidelines/, mandating that health plans include no-cost-sharing coverage of "All Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity" as part of required women's "preventive care"; regulations issued by Defendants in 2010 directing HRSA to develop those guidelines, 75 Fed. Reg. 41726 (July 19, 2010); the statutory authority found in 42 U.S.C. § 300gg-13(a)(4) requiring unspecified preventive health services generally, to the extent Defendants have used it to mandate coverage to which Plaintiffs and other employers have religious objections; penalties existing throughout the United States Code for noncompliance with these requirements; and other provisions of PPACA or its implementing regulations that affect exemptions or other aspects of the Mandate.

otherwise facilitate the insurance coverage and use of abortifacient drugs, contraception, sterilization and related education and counseling.

8.      This Mandate applies to Plaintiffs solely because they wish to operate their business in the United States of America.   As have many entities organized by people of faith, the Grote Family has concluded that compliance with Defendants' Mandate would require them to violate their deeply held religious beliefs as formed by the moral teachings of the Catholic Church.

9.      To Grote and its owners, this coverage is not morally different than surgical abortion.    Defendants have now mandated that the Grotes violate their deeply held religious beliefs by immediately inserting coverage of abortifacients (and education and counseling in favor of the same) into the employee health plan.   This is something Grote cannot comply with in good conscience.

10.      The Mandate illegally and unconstitutionally coerces the Plaintiffs to violate their sincerely held Catholic beliefs under threat of heavy fines and penalties. The Mandate also forces the Plaintiffs to fund government-dictated speech that is directly at odds with the religious ethics derived from their deeply held religious beliefs and the moral teachings of the Catholic Church that they strive to embody in their business. Defendants' coercion tramples on the freedom of conscience of Plaintiffs and millions of other Americans to abide by their religious convictions, to comply with moral imperatives they believe are decreed by God Himself through His Church, and to contribute through society through business consistent with their religious ethics, deeply held religious beliefs, and the moral teachings of the Catholic Church.

11.      Defendants' refusal to accommodate the conscience of the Plaintiffs is highly selective. PPACA exempts a variety of health plans from the Mandate, and upon

information and belief the government has provided thousands of exemptions from the PPACA for various entities such as large corporations.   But Defendants' Mandate does not exempt Plaintiffs' plan or those of many other religious Americans.

12.     Defendants' actions violate the Plaintiffs' right freely to exercise religion, protected by the Religious Freedom Restoration Act and the Religion Clauses of the First Amendment to the United States Constitution.

13.     Defendants' actions also violate the Plaintiffs' right to the freedom of speech, as secured by the Free Speech Clause of the First Amendment to the United States Constitution, and their due process rights secured by the Fifth Amendment to the United States Constitution.

14.     Additionally, Defendants violated the Administrative Procedure Act, 5 U.S.C. § 553, by imposing the Mandate without prior notice or public comment, and for other reasons.

15.     Plaintiffs are faced with imminent harm due to Defendants' Mandate. The Mandate by its terms forces Plaintiffs to obtain and pay for insurance coverage of the objectionable items in their January 1, 2013 plan. Plaintiffs must coordinate and arrange the details for that plan no later than November 15, 2012.  Plaintiffs therefore will suffer irreparable harm by or before January 1, 2013, unless the Court enters declaratory and injunctive relief to protect Plaintiffs from Defendants' deliberate attack on their consciences and religious freedoms resulting from forced compliance with the Mandate.

## IDENTIFICATION OF PARTIES

16.     Grote Industries, LLC, an Indiana limited liability company, is a family business, located in Madison, Indiana, that manufactures vehicle safety systems.

17.     The managing member of Grote Industries, LLC is Grote Industries, Inc., an Indiana corporation.   Grote Industries, Inc. is owned and operated by the named individual plaintiffs and several other Grote family members. Together they possess full ownership of and management responsibility for the business known as Grote Industries.

18.     Plaintiff William D. Grote, III is a resident of Madison, Indiana.   He is Chairman of the Board and Chief Executive Officer of Grote Industries, Inc., and owns an equity interest in Grote Industries.   William D. Grote is a Catholic and, from the beginning, has sought to run Grote Industries in harmony with the teachings of the Catholic Church.

19.     Plaintiff William Dominic Grote, IV is a resident of Madison, Indiana.   He is the President and Chief Operating Officer of Grote Industries, Inc. and owns an equity interest in Grote Industries.   Dominic Grote is a Catholic and seeks to run Grote Industries in harmony with the teachings of the Catholic Church.

20.     Plaintiff Walter F. Grote, Jr. is a resident of Naples, Florida.   He is the retired Chairman of the Board and a current director of Grote Industries, Inc., and owns an equity interest in Grote Industries.   Walter F. Grote, Jr. is a Catholic and, from the beginning, has sought to run Grote Industries in harmony with the teachings of the Catholic Church.

21.     Plaintiff Michael R. Grote is a resident of Madison, Indiana.   He is the Assistant Treasurer of Grote Industries, Inc. and also owns an equity interest in Grote Industries.   Michael Grote is a Catholic and seeks to run Grote Industries in harmony with the teachings of the Catholic Church.

22.     Plaintiff W. Frederick Grote, III is a resident of Madison, Indiana.   He is the Secretary of Grote Industries, Inc. and owns an equity interest in Grote Industries. Frederick Grote seeks to run Grote Industries in harmony with the teachings of the Catholic Church.

23.     Plaintiff John R. Grote is a resident of Madison, Indiana.   He is the Assistant Secretary of Grote Industries, Inc.   He also owns an equity interest in Grote Industries.   John R. Grote is a Catholic and seeks to run Grote Industries in harmony with the teachings of the Catholic Church.

24.     By virtue of their ownership, directorship and officer positions, the Grote Family is responsible for implementing Grote Industries' compliance with Defendants' Mandate.

25.     Defendants are appointed officials of the United States government and United States Executive Branch agencies responsible for issuing and enforcing the Mandate.

26.     Defendant Kathleen Sebelius is the Secretary of the United States Department of Health and Human Services (HHS).   In this capacity, she has responsibility for the operation and management of HHS.   Sebelius is sued in her official capacity only.

27.     Defendant HHS is an executive agency of the United States government and is responsible for the promulgation, administration and enforcement of the Mandate.

28.     Defendant Hilda Solis is the Secretary of the United States Department of Labor. In this capacity, she has responsibility for the operation and management of the Department of Labor.   Solis is sued in her official capacity only.

29.     Defendant Department of Labor is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the Mandate.

30.     Defendant Timothy Geithner is the Secretary of the Department of the Treasury. In this capacity, he has responsibility for the operation and management of the Department.   Geithner is sued in his official capacity only.

31.     Defendant Department of Treasury is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the Mandate.

## JURISDICTION AND VENUE

32.     This action arises under the Constitution and laws of the United States. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1361, jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 & 2202, 42 U.S.C. § 2000bb-1, 5 U.S.C. § 702, and Fed. R. Civ. P. 65, and to award reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and 42 U.S.C. § 1988.

33.     Venue lies in this district and division pursuant to 28 U.S.C. § 1391(e).   A substantial part of the events or omissions giving rise to the claim occurred in this judicial district and division, and the Plaintiffs are located in this district and division.

## FACTUAL ALLEGATIONS

I.      **The Grote Family's Religious Beliefs and Operation of Grote Industries According to the Same Beliefs.**

34.     The Grote Family consists entirely of practicing and believing Catholic Christians.

35.     They strive to follow Catholic ethical beliefs and religious and moral teachings throughout their lives, including in their operation of Grote Industries.

36.     The Grote Family sincerely believes that the Catholic faith does not allow them to violate Catholic religious and moral teachings in their decisions operating Grote Industries.   They believe that according to the Catholic faith their operation of Grote Industries must be guided by ethical social principles and Catholic religious and moral teachings, that the adherence of their business practice according to such Catholic ethics and religious and moral teachings is a genuine calling from God, that their Catholic faith prohibits them to sever their religious beliefs from their daily business practice, and that their Catholic faith requires them to integrate the gifts of the spiritual life, the virtues, morals, and ethical social principles of Catholic teaching into their life and work.

37.     The Catholic Church teaches that abortifacient drugs, contraception and sterilization are intrinsic evils.

38.     As a matter of religious faith the Grote Family believes that those Catholic teachings are among the religious ethical teachings they must follow throughout their lives including in their business practice.

39.     Consequently, the Grote Family believes that it would be immoral and sinful for them to intentionally participate in, pay for, facilitate, or otherwise support abortifacient drugs, contraception, sterilization, and related education and counseling, as would be required by the Mandate, through their inclusion in health insurance coverage they offer at Grote Industries.

40.     Grote Industries' "Business Philosophy" defines its philosophy as "a set of beliefs on which all of its policies and actions are based."   It further describes its

management guidelines as striving to maintain the "highest ethical standards" and operating with "personal integrity" as the foundation of success.

41.     The Grote Family has, for a substantial period of time to the present, operated Grote Industries in promotion of Catholic ethical principles in a variety of ways including but not limited to the structuring of their health insurance plan.

42.     Under the Grote Family's direction, Grote Industries has donated significant amounts to Catholic parishes, schools, evangelical efforts, and charitable causes averaging approximately $98,000 every year since 2007.   This practice has been in place for many years prior to 2007.

## II.     Grote Industries' Health Insurance Plan

43.     As part of fulfilling their organizational mission and Catholic beliefs and commitments, Plaintiffs provide generous health insurance for their employees.

44.     Grote Industries has 1,148 full-time employees as of September 28, 2012 throughout its various locations.

45.     Plaintiffs maintain a self-insured group plan for their employees, in which Grote Industries acts as its own insurer.

46.     The plan year for Grote Industries' self-insured plan begins on January 1 of each year, with the next plan year starting on January 1, 2013.

47.     Consistent with Plaintiffs' religious commitments, Grote Industries' self-insured plan does not cover abortifacient drugs, contraception or sterilization, and it has not done so for its January 1, 2012 – January 1, 2013 plan year.

48.     Grote Industries' self-insured plan is not subject to any Indiana state requirement to cover contraception or abortion.

49.     To implement the plan for the new year beginning January 1, 2013, and/or to make substantial plan changes as a result of the Mandate, Plaintiffs must make insurance coverage decisions and logistical arrangements no later than November 15, 2012, in order for the plan to be arranged, reviewed, finalized, and offered to employees for open enrollment in time for the plan year's January 1 start date.

## III.   The PPACA and Defendants' Mandate Thereunder

50.     Under the PPACA, employers with over 50 full-time employees are required to provide a certain minimum level of health insurance to their employees.

51.     Nearly all such plans must include "preventive services," which must be offered with no cost-sharing by the employee.

52.     On February 10, 2012, the Department of Health and Human Services finalized a rule (previously referred to in this Complaint as the Mandate) that imposes a definition of preventive services to include all FDA-approved "contraceptive" drugs, surgical sterilization, and education and counseling for such services.

53.     This final rule was adopted without giving due weight to the tens of thousands of public comments submitted to HHS in opposition to the Mandate.

54.     In the category of "FDA-approved contraceptives" included in this Mandate are several drugs or devices that may cause the demise of an already-conceived but not-yet-implanted human embryo, such as "emergency contraception" or "Plan B" drugs (the so-called "morning after" pill).

55.     The FDA approved in this same category a drug called "ella" (the so-called "week after" pill), which studies show can function to kill embryos even after they have implanted in the uterus, by a mechanism similar to the abortion drug RU-486.

56.     The manufacturers of some such drugs, methods and devices in the category of "FDA-approved contraceptive methods" indicate that they can function to cause the demise of an early human embryo.

57.     The Mandate also requires group health care plans to pay for the provision of counseling, education, and other information concerning contraception (including devices and drugs such as Plan B and ella that cause early abortions or harm to human embryos) and sterilization for all women beneficiaries who are capable of bearing children.

58.     The Mandate applies to the first health insurance plan-year beginning after August 1, 2012.

59.     An entity cannot escape the Mandate by self-insuring; Plaintiffs' plan is thus subject to the Mandate even though it is self-insured.

60.     Thus Plaintiffs are, absent relief from this Court; subject to the Mandate's requirement of coverage of the above-described items starting in the Grote Industries January 1, 2013 plan.

61.     The Mandate makes little or no allowance for the religious freedom of entities and individuals, including Plaintiffs, who object to paying for or providing insurance coverage for such items.

62.     An entity cannot freely avoid the Mandate by simply refusing to provide health insurance to its employees, because the PPACA imposes monetary penalties on entities that would so refuse.

63.     The exact magnitude of these penalties may vary according to the complicated provisions of the PPACA, but the fine is approximately $2,000 per employee per year.

64.     PPACA also imposes monetary penalties if Grote Industries were to continue to offer its self-insured plan but continued omitting abortifacients, contraceptives and sterilization.

65.     The exact magnitude of these penalties may vary according to the complicated provisions of the PPACA, but the fine is approximately $100 per day per employee, with minimum amounts applying in different circumstances.

66.     If Plaintiffs do not submit to the Mandate they also trigger a range of enforcement mechanisms that exist under ERISA, including but not limited to civil actions by the Secretary of Labor or by plan participants and beneficiaries, which would include but not be limited to relief in the form of judicial orders mandating that Plaintiffs violate their sincerely held religious beliefs and provide coverage for items to which they religiously object.

67.     The Mandate applies not only to sponsors of group health plans like Plaintiffs, but also to issuers of insurance. Accordingly, Plaintiffs cannot avoid the Mandate by shopping for an insurance plan that accommodates their right of conscience, because the Administration has intentionally foreclosed that possibility.

68.     The Mandate offers the possibility of a narrow exemption to religious employers, but only if they meet all of the following requirements:

    (1) "The inculcation of religious values is the purpose of the organization";

    (2) "The organization primarily employs persons who share the religious tenets of the organization";

    (3) "The organization serves primarily persons who share the religious tenets of the organization"; and

    (4) The organization is a church, an integrated auxiliary of a church, a convention or association of churches, or is an exclusively religious

activity of a religious order, under Internal Revenue Code 6033(a)(1) and (a)(3)(A).

69.    The Mandate imposes no constraint on the government's discretion to grant exemptions to some, all, or none of the organizations meeting the Mandate's definition of "religious employers."

70.    Plaintiffs are not "religious" enough under this definition in several respects, including but not limited to because they have purposes other than the "inculcation of religious values," they do not primarily hire or serve Catholics, and because Grote Industries is not a church, integrated auxiliary of a particular church, convention or association of a church, or the exclusively religious activities of a religious order.

71.    The Mandate fails to protect the statutory and constitutional conscience rights of religious Americans like Plaintiffs even though those rights were repeatedly raised in the public comments.

72.    The Mandate requires that Plaintiffs provide coverage for abortifacient methods, contraception, sterilization and education and counseling related to the same, against their conscience and in violation of their religious beliefs, in a manner that is contrary to law.

73.    The Mandate constitutes government-imposed coercion on Plaintiffs to change or violate their sincerely held religious beliefs.

74.    The Mandate exposes Plaintiffs to substantial fines for refusal to change or violate their religious beliefs.

75.    The Mandate will impose a burden on the Plaintiffs' employee recruitment and retention efforts by creating uncertainty as to whether or on what terms they will be

able to offer health insurance beyond the Mandate's effect or will suffer penalties therefrom.

76.     The Mandate will place Plaintiffs at a competitive disadvantage in their efforts to recruit and retain employees.

77.     Plaintiffs have a sincere conscientious religious objection to providing coverage for abortifacients, contraception, sterilization and related education and counseling.

78.     The Mandate does not apply equally to all religious adherents or groups.

79.     PPACA and the Mandate are not generally applicable because they provide for numerous exemptions from their rules.

80.     For instance, the Mandate does not apply to members of a "recognized religious sect or division" that conscientiously objects to acceptance of public or private insurance funds. See 26 U.S.C. §§ 5000A(d)(2)(a)(i) and (ii).   Plaintiffs do not meet this exemption.

81.     In addition, as described above, the Mandate exempts certain churches narrowly considered to be religious employers.

82.     Furthermore, the PPACA creates a system of individualized exemptions because under the PPACA's authorization the federal government has granted discretionary compliance waivers to a variety of businesses for purely secular reasons.

83.     The Mandate does not apply to employers with preexisting plans that are "grandfathered."

84.     Grote Industries' plan is not grandfathered under PPACA, nor will its plan year that starts on January 1, 2013 have grandfathered status.

85.     The Mandate does not apply through the employer mandate to employers having fewer than 50 full-time employees.

86.     President Obama held a press conference on February 10, 2012, and later (through Defendants) issued an "Advanced Notice of Proposed Rulemaking" ("ANPRM") on March 21, 2012 (77 Fed. Reg. 16501–08), claiming to offer a "compromise" under which some religious non-profit organizations not meeting the above definition would still have to comply with the Mandate, but by means of the employer's insurer offering the employer's employees the same coverage for "free."

87.     This "compromise" is not helpful to Plaintiffs because, among other reasons, Grote Industries is not a non-profit entity, and Grote Industries' plan is self-insured.

88.     The ANPRM is neither a rule, a proposed rule, nor the specification of what a rule proposed in the future would actually contain.   It in no way changes or alters the final status of the February 15, 2012 Mandate.   It does not even create a legal requirement that Defendants change the Mandate at some time in the future.

89.     On February 10, 2012 a document was also issued from the Center for Consumer Information and Insurance Oversight (CCIIO), Centers for Medicare & Medicaid Services (CMS), of HHS, entitled "Guidance on the Temporary Enforcement Safe Harbor for Certain Employers, Group Health Plans and Group Health Insurance Issuers with Respect to the Requirement to Cover Contraceptive Services Without Cost Sharing Under Section 2713 of the Public Health Service Act, Section 715(a)(1) of the Employee Retirement Income Security Act, and Section 9815(a)(1) of the Internal Revenue Code."

90.     Under this "Guidance," an organization that truthfully declares "I certify that the organization is organized and operated as a non-profit entity; and that, at any point from February 10, 2012 onward, contraceptive coverage has not been provided by the plan, consistent with any applicable State law, because of the religious beliefs of the organization," and that provides a specified notice to plan participants, will not "be subject to any enforcement action by the Departments for failing to cover recommended contraceptive services without cost sharing in non-exempted, non-grandfathered group health plans established or maintained by an organization, including a group or association of employers within the meaning of section 3(5) of ERISA, (and any group health insurance coverage provided in connection with such plans)," until "the first plan year that begins on or after August 1, 2013."

91.     The "Guidance" categorically disqualifies Plaintiffs from making use of this "extra year" because, among other reasons, Grote Industries is not a non-profit entity.

92.     Therefore while the president's "compromise" and guidance purport to accommodate the religious beliefs of even more groups beyond the Mandate's initial exemption for churches, none of these measures will stop the Mandate from imposing its requirements on Plaintiffs' plan year beginning January 1, 2013.

93.     Unless relief issues from this Court, Plaintiffs are forced to take the Mandate into account now and in the future, as it plans expenditures, including employee compensation and benefits packages, for the January 1, 2013 plan year and for the next several years.   It will have to negotiate contracts for new and existing employees and these contracts will extend into the time frame when the Mandate begins to apply to its health insurance plans.

94.     The Mandate will have a profound and adverse effect on Plaintiffs and how they negotiate contracts and compensate their employees.

95.     The Mandate will make it difficult for Plaintiffs to attract quality employees because of uncertainty about health insurance benefits.

96.     Any alleged interest Defendants have in providing free FDA-approved contraception, abortifacients and sterilization without cost-sharing could be advanced through other, more narrowly tailored mechanisms that do not burden the religious beliefs of Plaintiffs and do not require them to provide or facilitate coverage of such items through their health plan.

97.     Without injunctive and declaratory relief as requested herein, including preliminary injunctive relief issued on or before January 1, 2013, Plaintiffs are suffering and will continue to suffer irreparable harm.

98.     Plaintiffs have no adequate remedy at law.

99.     Grote Industries' self-insured plan covers pregnancy-related expenses, such as: prenatal and postnatal care; hospital or birthing center room and board; obstetrical fees for routine prenatal care; vaginal delivery or cesarean section; diagnostic testing when clinical eligibility for coverage is met; abdominal operation for intrauterine pregnancy or miscarriage; outpatient birthing centers; midwives.  The plan does not consider pregnancy an excluded pre-existing condition.

100.    Grote Industries' self-insured plan provides a maternity management service, which provides prenatal education and high-risk pregnancy identification to help mothers carry their babies to term. This program increases the number of healthy, full term deliveries and decreases the likelihood of complications requiring a long term hospital stay for the mother or baby. Program members are contacted via telephone

upon entrance into the program, at which time future calls are also scheduled. A comprehensive assessment to determine the member's risk level and educational need is performed. To increase participation, Grote Industries pays an annual fee, so that expectant mothers can participate for free.

101.    Grote Industries has a wellness program for employees which program includes promoting the health of women during and after pregnancy.

102.    The lowest paid employee at Grote Industries that is enrolled in the self-insured plan earns $20,696 per year.   Only four (4) such employees earn $22,070 or less.   The median wage of health plan participants is $30,493 and their average wage is $46,487 (these figures are calculated without including the wages of Grote Industries' owners).

103.    Grote Industries' self-insured plan (Plan 1)—is not grandfathered under PPACA because between the 2010 plan year and the 2011 plan year, the prescription drug benefits co-pays increased as follows: the non-formulary copay increased from $35 to $45 (threshold for loss of grandfathered status was $41.14), the mail-order brand co-pay increased from $22 to $35 (threshold for loss of grandfathered status was $27.12), and the mail-order non-formulary co-pay increased from $42 to $75 (threshold for loss of grandfathered status was $49.37).

104.    Grote Industries' self-insured plan (Plan 2)—is not grandfathered under PPACA because between the 2010 plan year and the 2011 plan year, the prescription drug benefits co-pays increased as follows: the non-formulary copay increased from $35 to $45 (threshold for loss of grandfathered status was $41.14), the mail-order brand co-pay increased from $22 to $35 (threshold for loss of grandfathered status was $27.12), and the mail-order non-formulary co-pay increased from $42 to $75 (threshold

for loss of grandfathered status was $49.37). In addition, there was a twenty-five percent (25%) increase in the deductible (threshold for loss of grandfathered status was 17.56%) and the required employee contribution per pay period increased on a scale from $7.74 to $21.60 for "employee only" coverage and from $19.24 to $46.75 for "employee and family" coverage each pay period.

105. Grote Industries' self-insured plan is not grandfathered under PPACA because for the January 1, 2011 plan year, Grote Industries did not provide notification to plan participants that its plan was considered grandfathered (because the plan was not considered grandfathered).

106. It would significantly injure Plaintiffs and their employees to require them to wait to know whether their January 1, 2013 health plan will cover the items required by the Mandate.

107. Plaintiffs offer their employees an open enrollment period on the January 1 plan year starting on December 1, 2012.

108. Employees cannot make an informed decision on that open enrollment period without knowing the final terms of the plan, including whether it will cover the Mandated items.

109. The open enrollment period cannot start without finalizing a contract with a stop-loss carrier, and also a third party administrator, for the plan in advance of December 1, 2012.

110. To finalize a contract with a stop-loss carrier, Plaintiffs must know the complete and final details of the plan's terms including its coverage, submit those details to their broker who submits them for bids to stop-loss carriers, review the bids and

negotiate with carriers who offer competitive bids, reach an agreement with a carrier, and draft, review, finalize and execute a contract with the carrier.

111.   The activities involved in securing stop-loss coverage and third-party administrator services typically take up to thirty (30) days to complete in time for the December 1, 2012 open enrollment period.

112.   Before the plan's terms are finalized and submitted for bids to stop-loss carriers, the Plaintiffs must decide what those terms will be, what will be covered in the plan, what employee contributions will be to the plan, and what the terms of Grote Industries' related wellness program for employees will be, through which employees receive credits towards their plan.

113.   Plaintiffs' decision on the plan's terms must be made based on knowing what items the plan will or will not cover, and what levels of employee contributions will be needed to meet Grote Industries' budget based on what the plan covers.

114.   If Plaintiffs were forced to add no-cost-sharing surgical sterilizations and implantable "contraceptive" methods to their plan as required by the Mandate, which cost hundreds or thousands of dollars, as well as all FDA-approved "contraceptives" including those that act to destroy early embryos, as well as patient education and counseling in facilitation of the aforementioned, all of which are required by the Mandate, Plaintffs would have take that inclusion into account at the time they decide what coverages and employee-contributions the budget of Grote Industries can afford. This decision must occur before the plan is submitted for bidding to stop-loss providers.

115.   Adding the Mandated items will require Grote Industries to either remove coverage of other services included in the plan, or increase employee contributions.

116.    Therefore if Plaintiffs are not afforded prompt injunctive relief against the Mandate, they and their employees face imminent and irreparable injury.

### FIRST CLAIM FOR RELIEF
**Violation of the Religious Freedom Restoration Act**
**42 U.S.C. § 2000bb**

117.    Plaintiffs reallege all matters set forth in the preceding paragraphs and incorporate them herein by reference.

118.    Plaintiffs' sincerely held religious beliefs prohibit them from providing coverage for abortifacients, contraception, sterilization, and related education and counseling in their employee health plan.

119.    When Plaintiffs comply with Catholic ethical and moral teachings on abortifacients, contraception, and sterilization and with their sincerely held religious beliefs, they exercise religion within the meaning of the Religious Freedom Restoration Act.

120.    The Mandate imposes a substantial burden on Plaintiffs' religious exercise and coerces them to change or violate their sincerely held religious beliefs.

121.    The Mandate chills Plaintiffs' religious exercise within the meaning of RFRA.

122.    The Mandate exposes Plaintiffs to substantial fines and/or financial burdens for their religious exercise.

123.    The Mandate exposes Plaintiffs to substantial competitive disadvantages because of uncertainties about their health insurance benefits caused by the Mandate.

124.    The Mandate furthers no compelling governmental interest and is not narrowly tailored to any compelling governmental interest.

125.    The Mandate is not the least restrictive means of furthering Defendants' stated interests.

126.    The Mandate violates RFRA.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

## SECOND CLAIM FOR RELIEF
### Violation of Free Exercise Clause of the
### First Amendment to the United States Constitution

127.    Plaintiffs reallege all matters set forth in the preceding paragraphs and incorporate them herein by reference.

128.    Plaintiffs' sincerely held religious beliefs prohibit them from providing coverage for abortifacients, contraception, sterilization, and related education and counseling in their employee health plan.

129.    When Plaintiffs comply with Catholic ethical and moral teachings on abortifacients, contraception, and sterilization and with their sincerely held religious beliefs, they exercise religion within the meaning of the Free Exercise Clause.

130.    The Mandate is not neutral and is not generally applicable.

131.    Defendants have created categorical exemptions and individualized exemptions to the Mandate.

132.    The Mandate furthers no compelling governmental interest.

133.    The Mandate is not the least restrictive means of furthering Defendants' stated interests.

134.    The Mandate coerces Plaintiffs to change or violate their sincerely held religious beliefs.

135.    The Mandate chills Plaintiffs' religious exercise.

136.    The Mandate exposes Plaintiffs to substantial fines and/or financial burdens for their religious exercise.

137.    The Mandate exposes Plaintiffs to substantial competitive disadvantages because of uncertainties about its health insurance benefits caused by the Mandate.

138.    The Mandate imposes a substantial burden on Plaintiffs' religious exercise.

139.    The Mandate is not narrowly tailored to any compelling governmental interest.

140.    By design, Defendants framed the Mandate to apply to some religious Americans but not to others, resulting in discrimination among religions.

141.    Defendants have created exemptions to the Mandate for some religious believers but not others based on characteristics of their beliefs and their religious exercise.

142.    Defendants designed the Mandate, the religious exemption thereto, and the "compromise" and guidance allowances thereto, in a way that makes it impossible for Plaintiffs and other similar religious Americans to comply with their sincerely held religious beliefs.

143.    Defendants promulgated both the Mandate and the religious exemption/allowances with the purpose and intent to suppress the religious exercise of Plaintiffs and others.

144.    The Mandate violates Plaintiffs' rights secured to them by the Free Exercise Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

### THIRD CLAIM FOR RELIEF
### Violation of the Establishment Clause of the
### First Amendment to the United States Constitution

145.    Plaintiffs reallege all matters set forth in the preceding paragraphs and incorporate them herein by reference.

146.    The First Amendment's Establishment Clause prohibits the establishment of any religion and/or excessive government entanglement with religion.

147.    To determine whether religious persons or entities like Plaintiffs are required to comply with the Mandate, are required to continue to comply with the Mandate, are eligible for an exemption or other accommodations, or continue to be eligible for the same, Defendants must examine the religious beliefs and doctrinal teachings of persons or entities like Plaintiffs.

148.    Obtaining sufficient information for the Defendants to analyze the content of Plaintiffs' sincerely held religious beliefs requires ongoing, comprehensive government surveillance that impermissibly entangles Defendants with religion.

149.    The Mandate discriminates among religions and among denominations, favoring some over others, and exhibits hostility to religious beliefs.

150.    The Mandate adopts a particular theological view of what is acceptable moral complicity in provision of abortifacient, contraceptive and sterilization coverage and imposes it upon all religionists who must either conform their consciences or suffer penalty.

151.    The Mandate violates Plaintiffs' rights secured to them by the Establishment Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

### FOURTH CLAIM FOR RELIEF
**Violation of the Free Speech Clause of the
First Amendment to the United States Constitution**

152.    Plaintiffs reallege all matters set forth in the preceding paragraphs and incorporate them herein by reference.

153.    Defendants' requirement of provision of insurance coverage for education and counseling regarding contraception and abortion-causing drugs forces Plaintiffs to speak in a manner contrary to their religious beliefs.

154.    Defendants have no narrowly tailored compelling interest to justify this compelled speech.

155.    The Mandate violates Plaintiffs' rights secured to them by the Free Speech Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

### FIFTH CLAIM FOR RELIEF
**Violation of the Due Process Clause of the
Fifth Amendment to the United States Constitution**

156.    Plaintiffs reallege all matters set forth in the preceding paragraphs and incorporate them herein by reference.

157.    Because the Mandate sweepingly infringes upon religious exercise and speech rights that are constitutionally protected, it is unconstitutionally vague and overbroad in violation of the due process rights of Plaintiffs and other parties not before the Court.

158.    Persons of common intelligence must necessarily guess at the meaning, scope, and application of the Mandate and its exemptions.

159.    This Mandate lends itself to discriminatory enforcement by government officials in an arbitrary and capricious manner.

160.    The Mandate vests Defendants with unbridled discretion in deciding whether to allow exemptions to some, all, or no organizations, in crafting "religious employer" exemptions and changing the same, in crafting and modifying further "accommodations" and additional definitions of entities that qualify for the same, and in enforcing the Mandate and crafting rules regarding the same such as through its repeatedly issued enforcement "Guidances."

161.    This Mandate is an unconstitutional violation of Plaintiffs' due process rights under the Fifth Amendment to the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

## SIXTH CLAIM FOR RELIEF
### Violation of the Administrative Procedure Act

162.    Plaintiffs reallege all matters set forth in the preceding paragraphs and incorporate them herein by reference.

163.    Because they did not give proper notice and an opportunity for public comment, Defendants did not take into account the full implications of the regulations by completing a meaningful consideration of the relevant matter presented.

164.    Defendants did not consider or respond to the voluminous comments they received in opposition to the interim final rule.

165.    Defendants conceded upon issuance of their interim final Mandate in August 2011 that they did not intend to give meaningful consideration to subsequent comments due to the alleged need to finalize the Mandate without subsequent change from the form it took in August 2011.

166.    Defendants actually refused to give meaningful consideration to comments when it finalized its Mandate in February 2012 without change.

167.     Defendants further conceded in its March 2012 ANPRM that it should have given meaningful consideration to and not finalized its Mandate without change in February 2012, and that the Mandate needed to be amended according to concerns raised in those comments.

168.     PPACA requires that the Mandate not be imposed until a year after it is issued in final unchanged form.

169.     Yet despite Defendants' expressed intent in March 2012 to amend the Mandate in the future, which implicitly conceded that it should not have been finalized without change in February 2012, Defendants have not refrained from imposing the Mandate against Grote Industries and others now, as if the August 2011 interim final rule meaningfully considered public comments.

170.     As a result of this violation, Grote Industries has been prejudiced by being threatened by and subject to the Mandate's penalties now, instead of in its first plan year that commences a year after the Mandate's issuance with changes that still have not occurred.

171.     Therefore, Defendants have taken agency action not in accordance with procedures required by law, and Plaintiffs are entitled to relief pursuant to 5 U.S.C. § 706(2)(D).

172.     In promulgating the Mandate, Defendants failed to consider the constitutional and statutory implications of the Mandate on Plaintiffs and similar persons.

173.     Defendants' explanation (and lack thereof) for its decision not to exempt Plaintiffs and similar religious organizations from the Mandate runs counter to the evidence submitted by religious Americans during the comment period.

174.    Thus, Defendants' issuance of the Mandate was arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A) because the Mandate fails to consider the full extent of its implications and it does not take into consideration the evidence against it.

175.    As set forth above, the Mandate violates RFRA and the First and Fifth Amendments.

176.    The Mandate is also contrary to the provisions of the PPACA which states that "nothing in this title"—i.e., title I of the Act, which includes the provision dealing with "preventive services"—"shall be construed to require a qualified health plan to provide coverage of [abortion] services . . . as part of its essential health benefits for any plan year." Section 1303(b)(1)(A).   Some drugs included as "FDA-approved contraceptives" under the Mandate cause abortions by causing the demise of human embryos before and/or after implantation.

177.    The Mandate is also contrary to the provisions of the Weldon Amendment of the Consolidated Security, Disaster Assistance, and Continuing Appropriations Act of 2009, Public Law 110 329, Div. A, Sec. 101, 122 Stat. 3574, 3575 (Sept. 30, 2008), which provides that "[n]one of the funds made available in this Act [making appropriations for Defendants Department of Labor and Health and Human Services] may be made available to a Federal agency or program . . . if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions."

178.    The Mandate also violates the provisions of the Church Amendment, 42 U.S.C. § 300a-7(d), which provides that "No individual shall be required to perform or

assist in the performance of any part of a health service program or research activity funded in whole or in part under a program administered by the Secretary of Health and Human Services if his performance or assistance in the performance of such part of such program or activity would be contrary to his religious beliefs or moral convictions."

179.   The Mandate is contrary to existing law and is in violation of the APA under 5 U.S.C. § 706(2)(A)f.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

### PRAYER FOR RELIEF

Plaintiffs respectfully request the Court enter the following relief:

A.   A judgment declaring the Mandate and its application to Plaintiffs and others similarly situated but not before the Court to be an unconstitutional violation of their rights protected by RFRA, the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment to the United States Constitution, the Due Process Clause of the Fifth Amendment to the United States Constitution, and the Administrative Procedure Act, and therefore invalid in any way applicable to them;

B.   A preliminary and a permanent injunction prohibiting Defendants from applying the Mandate to Plaintiffs and others similarly situated but not before the Court in a way that substantially burdens the religious belief of Plaintiffs or any person in violation of RFRA and the Constitution, and prohibiting Defendants from continuing to illegally discriminate against Plaintiffs and others not before the Court by requiring them to provide health insurance coverage for abortifacients, contraception, sterilization and related education and counseling to employees;

C.   Award Plaintiffs court costs and reasonable attorney's fees, as provided by the Equal Access to Justice Act and RFRA (as provided in 42 U.S.C. § 1988); and

D. Grant such other and further relief as to which the Plaintiffs may be entitled.

Plaintiffs demand a jury on all issues so triable.

Respectfully submitted this 29th day of October, 2012.

*Attorneys for Plaintiffs:*

*s/Michael J. Cork*

_____

Michael A. Wilkins
Of Counsel
Broyles Kight & Ricafort, PC
8250 Haverstick Road, Suite 100
Indianapolis, IN 46240
317-428-4527 Direct
317-571-3610 Fax
mwilkins@bkrlaw.com

Michael J. Cork
Bamberger Foreman Oswald & Hahn, LLP
201 N. Illinois St., Suite 1225
Indianapolis, IN 46204-4219
(317) 464-1594
(317) 464-1592 (Fax)
mcork@bamberger.com

Bryan Beauman (Admission *pro hac vice* motion forthcoming)
Alliance Defending Freedom
P.O. Box 779
Paris, KY 40362-0779
(859) 340-1127
bbeauman@alliancedefendingfreedom.com

Matthew S. Bowman (Admission *pro hac vice* motion forthcoming)
Alliance Defending Freedom
801 G Street NW, Suite 509
Washington, D.C. 20001
(202) 393-8690
(202) 237-3622 (facsimile)
mbowman@alliancedefendingfreedom.org

## VERIFICATION OF FIRST AMENDED VERIFIED COMPLAINT
## PURSUANT TO 28 U.S.C. § 1746[‡]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on _____, 2012

_____
William D. Grote, III

*In compliance with S.D.Ind.L.R. 5.11, the verifications bear original handwritten signatures which have been scanned into PDF for electronic filing.

## VERIFICATION OF FIRST AMENDED VERIFIED COMPLAINT
## PURSUANT TO 28 U.S.C. § 1746[‡]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on _____10-27_____, 2012

William Dominic Grote, IV

**VERIFICATION OF FIRST AMENDED VERIFIED COMPLAINT
PURSUANT TO 28 U.S.C. § 1746‡**

I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge.

Executed on _____ 10-24 _____, 2012

_Walter F Grote_
Walter F. Grote, Jr.

**VERIFICATION OF FIRST AMENDED VERIFIED COMPLAINT
PURSUANT TO 28 U.S.C. § 1746‡**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on ___10/27___, 2012

_____
Michael R. Grote

## VERIFICATION OF FIRST AMENDED VERIFIED COMPLAINT
## PURSUANT TO 28 U.S.C. § 1746‡

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on _____10 . 26_____, 2012

_____
W. Frederick Grote, III

## VERIFICATION OF FIRST AMENDED VERIFIED COMPLAINT
## PURSUANT TO 28 U.S.C. § 1746[‡]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on _____10-27_____, 2012

John R. Grote

L:\LIB\DOCS\61060\COMPLAIN\10N8602.DOCX